Mr. Schram's right to a fair trial in this case was violated by the repeated admission of minimally probative and highly prejudicial evidence that tended to portray him as a serial criminal and thus not worthy of the same level of due process that an ordinary citizen enjoys. That came in three forms. One, a video of Mr. Schram being arrested in a traffic stop, which could have been assumed to be a DUI stop, but whatever it was assumed to be, the jury saw him in handcuffs on a prior occasion. In the form of an audio recording where he was answering questions about another assault. And in the form of a photograph showing him with clearly a chain connecting his legs in a custodial setting. Well, I'm a district judge, and I am concerned that defense counsel didn't alert the court to the 404B problem. You know, counsel said, this is the 403 problem. And so that's the way he was looking at it. I think that the way it was analyzed by the district court judge was very much in the context of this is minimally probative and highly prejudicial evidence. And I think that the ---- But that's what defense counsel said the problem was, that it was too prejudicial. I understand. And I think it's hard to understate the prejudice in a case where identity is the issue. This is not a case about mens rea or something else. This is a case, it's a whodunit. And it's really hard to understate the prejudice of the jury repeatedly seeing Mr. Schramm in the light of being in other crimes, committing other crimes. So you're resting your argument here on that issue, is that right? Well, no, we're resting it on both that and the fact that it was not proper 404 evidence as well. I mean, and I think this ---- the other point about this is under this Court's opinion in Luna, where identity is the issue, the evidence has to be distinctive. And this wasn't distinctive evidence. It was evidence about wearing ---- having a cell phone, smoking a cigarette, and wearing a hooded sweatshirt. And the government conceded that the hooded ---- they couldn't even tell if the hooded sweatshirt was of the same color. They said it was darkish in color. There was also a statement about maybe the hooded sweatshirt was missing a drawstring. But I don't think any of that is particularly distinctive. And when it comes to ---- Counsel, excuse me. Yes. May I just want to interject a question? If, in fact, the 404b objection was not contemporaneously made, are you arguing it was plain error at this juncture? If, in fact, this Court finds that it was not contemporaneously made, yes, we'd When it comes to the audio recording, one, there was plenty of other evidence from which the jury could compare the voice. There was no need for the district court to admit this highly prejudicial recording. But it also wasn't distinctive evidence. The testimony was that Mr. Schramm had a gravelly smoker's voice, and the government presented no scientific evidence about how to identify a voice. But certainly, if it's true that some people who smoke have a gravelly voice, that hardly makes it distinctive evidence. And other evidence was allowed in regardless of that. And then, finally, the other piece of evidence, I mean, the district court allowed in a photograph of Mr. Schramm with shackles, and the purpose was that somehow his canvas tennis shoes were distinctive. And the comment was, well, they certainly have a distinctive shape. I don't know what that means in the context of a shoe. Could the jury have seen those shackles? I mean, I looked at the picture. I couldn't make it out. Well, I think the district court judge, in fact, said on the record that he could see the shackle. So if he could see it, I think we can assume the jury could see it. Counsel, let me ask you about, because I know they're going to, the government's going to stand up and argue this. I want to get your take on it, is that let's assume under Luna there were some errors here, right? Luna is a pretty strong case for you, and no doubt about it. But they're going to say, look, you have the cigarette outside. You have two people, Lunsford and the niece, who identify as a voice from the tape. And you have the backpack and the letter from your client to the other niece telling her to pick up the backpack and basically, I'm paraphrasing here, don't tell anyone that I've asked you to, don't tell anyone about this backpack. The backpack happens to be very, very similar to the one that appears in the video. The government's going to say, look, even if there was Luna error here, it was all harmless or it wasn't plain because of all this other evidence. And what's your response to that? Well, thank you for that question. I mean, there was a cigarette butt with Mr. Schramm's DNA on it outside of a 10-minute market where there were numerous other cigarette butts. And that fact alone only shows that he was a cigarette smoker and that he may have visited that convenience store that's in his neighborhood at some point. But I thought the clerk said she had just been sweeping the sidewalk, and so she would have swept away the other cigarette butts. I don't think that, I mean, I don't think that evidence was particularly credible or would have been persuasive to the jury that beyond a reasonable doubt, Mr. Schramm was the robber just based on a cigarette butt. Well, it's more than that. It's also the voice recognition of the niece and her fiancé. Yes. And as I said, you know, there was no scientific evidence offered that the niece or the boyfriend would have been able to identify that voice. The only evidence about the voice was it was a gravelly smoker's voice. And to be fair, you've also mentioned the backpack. The backpack was something that is in mass production. Those three facts, I don't think this Court can say that Mr. Schramm would have been convicted beyond a reasonable doubt based on only those three facts, which is, I think, why the government pressed so hard to parade all this other prejudicial evidence in front of the jury. The second way that Mr. Schramm's rights were violated was by the warrantless search of his girlfriend's residence where he was a social guest. And I think the first issue is whether or not he had a reasonable expectation of privacy. And the Supreme Court has clearly said that an overnight guest has a reasonable expectation of privacy. And even in, if I don't get this wrong, in Carter, where the Supreme Court said that he had a reasonable expectation of privacy, Justice Kennedy said the guest need only show a connection to the property. I think it's arguable that Mr. Schramm was an overnight guest. You know, the testimony that was undisputed was that he had spent the night there on many occasions. Well, no, I think absent the stay-away order, I think you have a good argument. The problem is there's that stay-away order. And so how do you get around that stay-away order here? Well, the Supreme Court in Ruckus disavowed the sort of bright-line test based on sort of common law property notions and basically said, inciting cats, said we don't look to property rights or those kinds of things to determine whether someone has a reasonable expectation of privacy. And it'd only be a subjective expectation that's objectively reasonable. And more recently, in Bird v. The United States, the Supreme Court rejected the idea that the fact that the defendant's name wasn't on a car rental agreement negated his expectation of privacy. So I think the court, the district court erred in just making that blanket statement about Mr. Schramm's expectation of privacy. Is there a way for us to go ahead, Judge Wardlaw. Oh, I'm sorry. I just wanted to know if there's a case on point involving a restraining order that either goes to the expectation of privacy or to the question of standing to raise the argument. I am not aware of a case, Your Honor. The government may have other information. So these facts would present a case of first impression to analyze that expectation under these circumstances. I think in some respects that's true, although I think Bird certainly tells us where the Supreme, how the Supreme Court might view this issue. And frankly, I think Rockis also points this court in a similar direction. It's not as though, you know, the government I think points to footnote number 12 where they talk about a wrongful presence on the property. But this isn't a case where Mr. Schramm was a burglar or was trespassing. He was invited into this home. But there's a court order saying he can't go in. There certainly was. But I don't. But that's got to trump. Pardon me? I mean, isn't there a Third Circuit case which is not good for you and good for the government on this issue? My recollection is you may be right. Yes. This Court certainly, as you know, is not bound by that. Certainly. But it looks like I'm out of time. Do you have any other questions? No questions. Okay. Thank you, Counsel. We'll probably give you a minute for rebuttal. Thank you very much. May it please the Court. I'm Amy Potter on behalf of the United States. I'm going to start with the suppression issue. And the cornerstone of the Fourth Amendment is reasonableness. And in this case, we had a violent robber who absconded from probation and who officers believed and the district court found had probable cause to believe was in the home of his victim. What they did is they talked to the homeowner, Ms. Zona Satterfield. And the specific detective that talked to Ms. Satterfield was Detective Ford, who she referred to as Bill. She knew Bill because Bill had investigated the assault case that resulted in the probation by or the probation order that prevented Mr. Schramm from having contact with Ms. Satterfield at all and also prevented him from being at her home at all. So they talked to Ms. Satterfield, and they do. They tell her, hey, look, we think he's in there. We want to go in. She says no. They tell her, look, you could be guilty of hindering if he's in there. Then they decide, you know what, we're just going to get a warrant. And when they tell Ms. Satterfield we're just going to get a warrant, they don't ask again for consent, as the district court found. She simply says, well, wait a second, Bill, how about you and I just go in there together? And Detective Ford said, well, I'm not willing to go in by myself, but let me go in with you and one other person. And they go into the house. That's reasonable. What the defense would have them do is leave, and leave potentially a violent domestic abuser in the home of his victim, who also had probably robbed a bank and at the time a potentially armed bank robbery. Again, there's no evidence later that it was armed, but he hinted at a gun in both the minute market and the bank robbery. And so when you add all those things together, this was reasonable. It was reasonable to go into the house and look for Mr. Schramm. When they found Mr. Schramm, they left, they obtained a warrant, and then they searched the house and found the evidence linking Mr. Schramm to the bank robbery. And with respect to the issue of whether the domestic violence restraining order is an issue of first impression, I do think in Cortez v. Ville, I'm not sure how to say it, 743 F. 3rd. 881, and it is cited in our briefs, is the closest case on point from the circuit. There are district court cases that I did not present because I didn't think Third Circuit district courts would be all that compelling. But they found that, and they based it on Ruckus, that that presence in that house was wrongful and that society was not willing to recognize a reasonable expectation of privacy by a domestic abuser that had been forbidden from being in that location by a court. And again, this was a condition of probation. It was not something that Ms. Satterfield could amend, and it was not something that Mr. Schramm could amend. The only people that could amend these conditions were the probation officer and the court. And so I believe it's reasonable. I also think that Ms. Satterfield gave consent, and the evidence before the district court was the detective's testimony and a video of Ms. Satterfield, and the district court correctly concluded she had given consent as well. Turning to the trial, the critical issue here was who robbed the minute market. The government alleged that it had been Mr. Schramm, and they relied on several pieces of evidence. Obviously, we've mentioned the cigarette, but what is critical about the cigarette is there's testimony by the clerk that she went outside and she swept up and she saw a guy smoking. He was wearing a sweatshirt. He had some facial hair. He was talking on a cell phone, and he had a raspy voice. And she watched him put out the cigarette and step on it, and then she went back in, and later she identified that same person as the robber. The government then offered identity evidence to prove, in addition to the DNA, that Mr. Schramm was the robber. That evidence included the sweatshirt, which a similar sweatshirt was worn three weeks prior during the traffic stop that was entered into evidence. So at the traffic stop, we have this distinctive sweatshirt. It has no drawstring and grommets and ribbing. We also have Mr. Schramm wearing similar shoes three weeks before. We have Mr. Schramm in the video step out of the car and step on a cigarette. We have Mr. Schramm with a cell phone in that video. So it wasn't just one sweatshirt. It was a collection of identity issues that the district court viewed and determined was more probative than prejudicial. And the district court is tasked with that. He carefully reviewed it. He indicated on the record, boy, that doesn't look like a DUI stop, and allowed that evidence in. He excluded other identity evidence. In terms of – oh, yes. Padraic, excuse me. Suppose we were to conclude that this evidence was not properly admissible under Rule 404B, under the plain error standard, and that it was highly prejudicial. What evidence would you stand on to say that it was not harmless? I would stand on the cigarette DNA that linked to Mr. Schramm, and that was the only cigarette that the police collected. It was the only cigarette outside. I would link to the backpack, which is distinctive. It's not just the nature of the backpack, but also the way the string is tied is similar. So there's that evidence. And then there is the voice ID. The niece, the niece's fiancé, and then also Detective Ford all identified Mr. Schramm's voice as the voice of the minute market robber. And there was also some evidence that he had frequented that area. So that would all be evidence that he, in fact, was the robber. Would you characterize that as overwhelming evidence? I think the DNA combined with the voice identification was overwhelming, yes, Your Honor. I think it's sufficient to meet the standard that this would not be a case we needed to reverse. If that's the case, why put in all of this? What I personally, and I'm not speaking for anybody else, view as highly prejudicial evidence of Mr. Schramm's prior contacts with police in various stages of restraint that only showed generic items like, so what, he had a cigarette, he had a cell phone, he had a sweatshirt, he had a backpack. To me, every kid on the street looks like that. Your Honor, I believe trial counsel was faced with a very difficult issue of identity. They looked over the evidence, they presented it to the district court, and they wanted to put the best foot forward they could in terms of the trial. And I think different evidence speaks to different jurors different ways. So they were looking to link all the chains together in terms of establishing Mr. Schramm's identity. And so they found the evidence that they presented to the district court. And, you know, with respect at least to the video, the district court gave a limiting instruction that was requested by the defense. There was no other limiting instructions, as far as I can tell, requested by the defense for the other evidence. But the jurors presumed a fault. There was a continuing objection as to the very high prejudicial value of showing these prior police contacts. I think that's the key thing, his encounters with police, his being shackled, his being stopped. I mean, it almost rings, you know, pointing to if he's been arrested or had these contacts with the police this many times, he has to be guilty. Well, Your Honor, certainly that was not the government's argument or intention. I think with the DUI stop, that was three weeks before the robbery, and that was a separate police contact. I believe the audio, when you listen to it, it actually appears that Mr. Schramm was the victim of an attack as opposed to the assailant. And certainly with respect to the pictures that involve the shoes, there was other evidence in the trial that he had been arrested for the Minutemarket robbery on September 24th. Those pictures were from the arrest for this offense. So I think the jury knew and had expected, in fact, that he had been arrested for this particular robbery. So that one was not so much a separate police contact, but came out of his arrest for the Minutemarket robbery. But we would stand on that this was harmless and that there was overwhelming evidence of Mr. Schramm. So the problem I have, I'm sorry, just one last, just I guess an observation, is that we often see things where we say, oh, this was error, this was highly prejudicial, but there was overwhelming evidence. And it's kind of a concern, like if the government has this overwhelming evidence, it should just stand on it instead of overreaching and putting in all this extra stuff that probably wasn't necessary for a conviction. And if we don't reverse in some of those cases, then the government has no incentive to just stand on evidence that it thinks is strong enough anyway and to not overreach and put in inflammatory material. It's just a dilemma when we look at this from the whole judicial system. I understand that. And obviously I'm here arguing to uphold the conviction and arguing overwhelming. When you're trial counsel a few weeks before trial, you don't ever think your case is overwhelming usually because that's why it's going to trial. So, you know, they were trying to prove identity. They presented it to the district court. The district court, I believe, did a careful analysis and decided the three pieces that we're arguing about were not overly prejudicial. Now, there was other evidence the district court excluded. So I don't believe the district court abused its discretion. I certainly understand the court's concern, and it's one I'll take back. But I think in this case the conviction should not be overturned. Roberts. I think sometimes when you reach for that one last cookie, you can knock the jar off the shelf. I understand, and I'm sure they're watching right now and will have heard this. So. Well, I was just thinking that the prosecutor is very familiar with 404B and that, you know, they have to give notice or at least have to meet the requirements of that rule, and they didn't do so. And yet you're conceding on appeal that it applied. So that says to me that they had doubts about whether the evidence, particularly the voice ID, it seems if you didn't have the conversation in the interview with the police, it would have been. I mean, I can see no reasonable doubt. I mean, you have the harder part. You have to show no reasonable doubt. So. Well, Your Honor, to that I would just say I didn't intend to concede 404B, but it was raised in the brief and I felt at least an obligation to answer the 404B issue that they raised. I think I did point out in my brief that it was very clearly stated below that this was simply a 403. It was never presented as a 404B. And the district court, you know, I acknowledge, did not analyze it as 404B because it wasn't before the district court. My point in the brief was to the extent they're raising it and this Court is going to entertain it, I believe it also qualified under 404B and that this Court could analyze it under those prongs. But it was not an intention to concede that they had raised that. Simply, I didn't want to leave an argument unanswered in my brief. So thank you for your time. Thank you, counsel. Let's go ahead and give rebuttal two minutes. Mr. Connors. I do want to just briefly address the government's argument about the validity of Ms. Sutterfield's consent because I didn't have a chance to get to that initially. As this Court is aware, there are sort of five factors that go into whether consent is voluntary. And I won't go through those, but I think what was clear was, Ms. — there was a clear effort on the part of the officers to overcome any resistance Ms. Sutterfield had to letting them — letting them into her home. She clearly didn't want them to go into the house. They let her know that she was effectively detained, that she wouldn't be able to go back into her house until they had obtained a warrant. While guns certainly were not drawn, she was surrounded by eight officers. Yes, she was threatened with arrest. She was not given Miranda warnings or notified that she didn't — was not able to consent. And I think very significantly, she denied consent several times before essentially giving in. And I think those things are very important in terms of this Court's analysis about whether or not she gave valid consent. The government also raised in its brief whether or not the good-faith exception to the Fourth Amendment applies in this case. I just want to note that it very clearly does not apply to this case. United States v. Leon, as this Court, I'm sure, is aware, involved a situation where officers went to the trouble to get a warrant, and that warrant ended up not being supported by probable cause. The Supreme Court has also outlined a couple of other exceptions. In Herring, where the failure — it was a warrantless search, but where the failure was not updating an arrest warrant database. And in Davis, where the officers were relying on binding precedent. None of those things is present in this case. If there was a Fourth Amendment violation here, it was a deliberate act on the part of these officers to overcome her will, to allow her consent into the House. I just want to make sure that we address that. Does the fact that she was a victim, that is, there was a protective order to protect her, does that make a difference in reasonableness? I don't know that, in the facts of this case, that there's evidence that she was protecting him because she was afraid of him. Certainly, there's evidence there was a no-contact order. I'll concede that. But that at the time that they were approaching her, that their concern was that she was afraid of him. In fact, if she was afraid of him, she may have wanted them to go get him and take him out of the House. All right. Thank you very much, counsel. Thank you to you both for your argument and briefing in this case. The matter is submitted.
judges: Wardlaw, Owens, Lefkow